ORIGINAL

IFP SUBM.
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
APR 21 2023
at 12 o'clock and 00 min. P M
CLERK, U.S. District Court LS
cc: DKW/ Filer

Joseph Peter Balintona
94361 Kahualena St. Waipahu, HI 96797
808 397 8949
jpbalintona@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR NINTH DISTRICT OF HAWAII

JOSEPH PETER LAURETO BALINTONA
an individual,

              *Plaintiff*,

v.

RUCHELLE AGREGADO BALINTONA,
an individual, and
MERLITA LAURETO PUMARAS
(a/k/a MERLITA LAURETO), an individual,

              *Defendants*.

Complaint for a Civil Case Alleging Breach of Contract
( 28 U.S.C 1332 Diversity of Citizenship)

CV23 00186 DKW KJM

## I. INTRODUCTION

1. This is a lawsuit for financial damages for breach of a contract termed the United States and Immigration Services ("USCIS") Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act ("Affidavit of Support").

2. The Affidavit of Support was created by the United States Congress in 1996 to ensure that family-sponsored immigrants are ensured a basic level of financial wellbeing, sufficient to meet the most basic needs of life.

3. In mandating the Affidavit of Support, Congress required visa petitioners, rather than the American people, serve as a financial safety net to new immigrants.

4. The Affidavit of Support is a legally binding contract between the sponsor and the United States government, of which the intending immigrant is a third-party beneficiary.

5. If a visa petitioner himself has inadequate income to serve as an Affidavit of Support sponsor, he may obtain the assistance of an additional "joint sponsor."

The joint sponsor executes an additional Affidavit of Support and becomes jointly and severally liable.

6. Plaintiff Joseph Peter Laureto Balintona is the beneficiary of two Affidavits of Support–one signed by each Defendant.

7. Defendant Ruchelle Agregado Balintona, Mr. Balintona's estranged husband, served as his visa petition and primary Affidavit of Support sponsor.

8. Defendant Merlita Laureto Pumaras (also known as Merlita Laureto), served as an additional joint sponsor for Mr. Balintona, executing a second Affidavit of Support for his benefit.

9. The Defendants have failed to provide Mr. Balintona with the basic level of financial support promised in the Affidavits of Support and have ignored Mr. Balintona's demand that they voluntarily comply with their obligations. This lawsuit seeks to compel the Defendants to fulfill the support duty mandated by the Affidavit of Support and associated federal law. *Cf.* 8 U.S.C. §1183a.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the federal Immigration and Nationality Act *See* 8 U.S.C. § 1183a(e)(l).

11. This Court has personal jurisdiction over both Defendants as, by signing Affidavit of Support, they submitted to the jurisdiction of any court with subject matter jurisdiction over Mr. Balintona's claims. 8 U.S.C. § 1183a(a)(1)(C).

12. Venue is proper in this District as both Defendants reside in the District. 28 U.S.C. § 1391(b)(1).

### III. PARTIES

13. Plaintiff Joseph Peter Laureto Balintona is a citizen of the Republic of the Philippines and lawful permanent resident ("Resident") of the United States of America.

14. Mr. Balintona resides in Honolulu, Hawaii.

15. Defendant Ruchelle Agregado Balintona is a citizen of the United States of America and is Mr. Balintona's estranged spouse.

16. As further alleged below, Ruchelle Agregado Balintona served as Mr. Balintona's visa petitioner, and executed an Affidavit of Support in the process, thereby contractually promising to provide a specified level of financial support to Mr. Balintona.

17. Ruchelle Agregado Balintona resides in Chula Vista, California.

18. Defendant Merlita Laureto Pumaras is a citizen of the United States of America.

19. As further alleged below, Merlita Laureto Pumaras served as Mr. Balintona's joint sponsor by executing an additional Affidavit of Support, thereby contractually promising to be jointly and severally liable with respect to Ruchelle Agregado Balintona's support duty to Mr. Balintona.

16. Merlita Laureto Pumaras resides in Chula Vista, California.

### IV. FACTUAL ALLEGATIONS

**Background concerning the Affidavit of Support.**

17. Since 1882 federal law has excluded the immigration of individuals considered "likely to become a public charge." Act of Aug. 3, 1882, 22 Stat. 214.

18. The current immigration statute, in effect at all times material to the facts alleged herein, forbids the entry of immigrants determined likely to become a "public charge." 8 U.S.C. § 1182(a)(4).

19. The Affidavit of Support is required for a family-based immigrant visa applicant to overcome public charge inadmissibility. See 8 U.S.C. § 1182(a)(4)(C).

20. The only family-based immigrants who are exempt from submitting an Affidavit of Support are those classes listed at 8 C.F.R. § 213a.2(a)(2)(ii), to wit: (A) self-petitioners under the Violence Against Women Act; (B) grandfathered immigrants with petitions pending prior to December 19, 1997; (C) those who have worked and/or may be credited with 40 qualifying quarters of coverage as defined under title II of the Social Security Act; (D) a child admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1);  and (E) a child who will automatically acquire citizenship under 8 U.S.C. § 1431.

21. The Affidavit of Support has been mandatory in marriage-based immigrant visa cases at all times material to the case at bar.

22. Once executed, the Affidavit of Support is a legally binding contract between the sponsor and the United States Government. 8 U.S.C. § 1183a(a)(1)(B).

23. By signing the Affidavit of Support, the sponsor agrees to provide the intending immigrant with any support necessary to maintain him at an income that is at least 125 percent of the Federal Poverty Guidelines for him household size. 8 U.S.C. § 1183a(a)(1)(A).

24. The Affidavit of Support expressly incorporates by reference the Immigration and Nationality Act, and by extension the implementing regulations thereof. *Cf.* 8 C.F.R. Part 213a.

25. As used in the Affidavit of Support, 8 U.S.C. § 1183a, and 8 C.F.R. Part 213a, "income" means an individual's total income (or adjusted gross income for those who file IRS Form 1040EZ) for purposes of the individual's U.S. Federal income tax liability, including a joint income tax return. 8 C.F.R. § 213a.1.

26. The Federal Poverty Guidelines (poverty line) are published annually in the Federal Register by the Department of Health and Human Services.

27. In any given year for which a sponsored immigrant is entitled to support under the Affidavit of Support, she is entitled to support based on the poverty line in effect for that year according to the individual's U.S. state of residency.

28. The Affidavit of Support obligation may be enforced by the immigrant beneficiary, who is a third-party beneficiary thereof. 8 U.S.C. § 1183a(a)(1)(B); 8 C.F.R. § 213a.2(d).

29. Per 8 C.F.R. § 213a.4(a)(2) a sponsored immigrant is not required to make any demand for payment from a sponsor prior to commencing a lawsuit to enforce the sponsorship obligation under the Affidavit of Support.

30. By signing the Affidavit of Support, the sponsor agrees to submit to the personal jurisdiction of any federal or state court that has subject matter jurisdiction over a lawsuit against the sponsor to enforce obligations under the Affidavit of Support. 8 U.S.C. § 1183a(a)(1)(C).

31. By signing the Affidavit of Support, the sponsor certifies under penalty of perjury that the sponsor has read and understands each part of the obligations described in the

Affidavit of Support and agrees freely and without any mental reservation or purpose of evasion to accept ach of those obligations in order to make it possible for the immigrant(s) listed in the Affidavit of Support to become lawful permanent residents of the United States.

32. The Affidavit of Support sponsor also agrees to notify the Government of any change in the sponsor's address within 30 days of the change by filing a Form I-865. See 8 U.S.C. § 1183a(d).

33. An Affidavit of Support sponsor must continue to perform under the contract until the occurrence of one of five events (collectively "the Terminating Events") set forth in the contract.

34. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary becomes a U.S. citizen (the "First Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(A).

35. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary has worked or can receive credit for 40 quarters of work under the Social Security Act (the "Second Terminating Event"). 8 U.S.C. § 1183a(a)(3)(A); 8 C.F.R. § 213a.2(e)(2)(i)(B).

36. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is no longer a permanent resident and has departed the U.S. (the "Third Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(C).

37. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is subject to an order of removal but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if

1   required (the "Forth Terminating Event"). 8 C.F.R. §
2   213a.2(e)(2)(i)(D).
3   38.   The sponsor's obligation under the Affidavit of Support concludes once the
4   beneficiary dies (the "Fifth Terminating Event").8 C.F.R. § 213a.2(e)(2)(i)(E).
5   39.   In order to serve as an Affidavit of Support sponsor, an individual must
6   demonstrate income at our above 125% of the poverty line for the individual's
7   household size. 8 U.S.C. § 1183a(f)(1)(E).
8   40.   If the income of the visa petitioner is below 125% of the poverty line, the
9   individual may demonstrate that he or she owns assets equal to at least five times the
10  income shortfall (or three times in the case of marriage-based case). Such assets must
11  be convertible to U.S. cash within 12 months. 8 U.S.C. § 1183a(f)(6)(A)(ii).
12  41.   An immigration petitioner who lacks sufficient financial ability to serve as an
13  Affidavit of Support sponsor may obtain the assistance of an additional individual who
14  agrees to serve as a "joint sponsor" by executing and filing an additional Affidavit of
15  Support. 8 U.S.C. § 1183a(f)(5)(A).
16  42.   By signing the Affidavit of Support a joint sponsor is jointly and severally liable to
17  the Affidavit of Support beneficiary, as between the primary and joint sponsor. 8 U.S.C.
18  § 1183a(f)(5)(A); 8 C.F.R. § 213a.1.
19  43.   An Affidavit of Support is considered executed once it is signed and submitted to
20  either USCIS or the Department of State in support of an intending immigrant's
21  application. 8 C.F.R. § 213a.2(a)(B)(ii).
22  44.   Once executed, the Affidavit of Support becomes a binding contract between the
23  sponsor and the United States government for the benefit of the sponsored immigrant. 8

C.F.R. § 213a.2(d).

45. A sponsor's support obligation under the Affidavit of Support commence when an intending immigrant obtains Resident status on the basis of an application that included the sponsor's Affidavit of Support. 8 C.F.R. § 213a.2(e)(1).

**Plaintiff's immigration to the United States.**

46. Mr. Balintona and Ruchelle Agregado Balintona met while he was residing in his home country of the Philippines.

47. Ruchelle Agregado Balintona thereafter commenced the process of facilitating Mr. Balintona's immigration to the United States.

48. Upon information and belief, Ruchelle Agregado Balintona signed a USCIS Form I-130, Petition for Alien Fiancé/e (the "Visa Petition").

49. Upon information and belief, the Visa Petition listed Mr. Balintona the intending non-immigrant beneficiary of the petition.

50. Upon information and belief, Ruchelle Agregado Balintona transmitted the signed Visa Petition to USCIS.

51. By filing the Visa Petition, Ruchelle Agregado Balintona had initiated the process of securing United States Residency status for Mr. Balintona.

52. Upon information and belief, Ruchelle Agregado Balintona's Visa Petition was approved.

53. Upon information and belief, Mr. Balintona thereafter applied for a K-1 category non-immigrant visa to the United States on the strength of the approved Visa Petition.

54. Mr. Balintona's K-1 visa application was approved.

55. Mr. Balintona thereafter traveled, and was admitted to, the United States as a K-1

category non-immigrant.

56. Mr. Balintona and Ruchelle Agregado Balintona were married within the 90-day period following Mr. Balintona's admission to the United States as a K-1 category non-immigrant.

57. Mr. Balintona thereafter filed a USCIS Form I-485, Application to Adjust Status to Permanent Resident (the "Residency Application") as a K-1 category visa holder who had married his U.S. citizen spouse within 90 days of his admission to the U.S. as a K-1 category non-immigrant.

58. Mr. Balintona did not qualify for any of the grounds at 8 C.F.R. § 213a.2(a)(2)(ii) that would have exempted him from the requirement to file an Affidavit of Support as a requirement for him immigrant visa application.

59. Upon information and belief, Ruchelle Agregado Balintona signed an Affidavit of Support, listing Mr. Balintona as the intending immigrant beneficiary (the "Primary Affidavit of Support").

60. Upon information and belief, Ruchelle Agregado Balintona caused the Primary Affidavit of Support to be filed with USCIS in support of Mr. Balintona's Residency Application.

61. Upon information and belief, in support of the Primary Affidavit of Support, Ruchelle Agregado Balintona filed proof of his income in the form of documentation of his federal income tax filings with the Internal Revenue Service.

62. Upon information and belief, Merlita Laureto Pumaras signed a second Affidavit of Support (the "Joint Sponsor Affidavit of Support").

63. Upon information and belief, the Joint Sponsor Affidavit of Support listed Mr.

Balintonas the intending immigrant beneficiary.

64. Upon information and belief, the Joint Sponsor Affidavit of Support was filed in support of Mr. Balintona's Residency Application.

65. USCIS approved Mr. Balintona's Residency Application on June 30, 2019.

66. Mr. Balintona has held status as a Resident since June 30, 2019.

**Defendants' breach of contract.**

67. The Defendants' duties under the Affidavits of Support commenced on June 30, 2019.

68. Mr. Balintona's Resident status was based on an application that included the Primary Affidavit of Support.

69. The Primary Affidavit of Support was "executed" and is therefore an enforceable contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

70. Mr. Balintona's Resident status was based on an application that included the Joint Sponsor Affidavit of Support.

71. The Joint Sponsor Affidavit of Support was "executed" and is therefore an enforceable contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

72. Mr. Balintona ceased residing with Ruchelle Agregado Balintona.

73. Ruchelle Agregado Balintona and Merlita Laureto Pumaras have failed to provide Mr. Balintona with the required financial support pursuant to their obligations under the Affidavits of Support.

74. Mr. Balintona income has been beneath 125% of the poverty line for his household size.

75. For purpose of damages calculation under the Affidavit of Support, Mr. Balintona has had a household of one at all times material to this matter, as she is the sole immigrant sponsored by the Primary Affidavit of Support and Joint Sponsor Affidavit of Support. *Erler v. Erler*, 824 F.3d 1173 (9th Cir. 2016).

76. For purpose of damages calculation under the Affidavit of Support, Mr. Balintona has resided in one of the State of Hawaii for all times at issue in this matter.

77. As a result of the Defendants' failure to provide financial support, Mr. Balintona has suffered direct damages in an amount to be determined at trial.

78. On February 8, 2022, Mr. Balintona contacted the Defendants through counsel and advised them of his claim under the Affidavit of Support, requesting that they contact him through counsel to address the same.

79. To date, neither Defendant has responded to Mr. Balintona's counsel concerning his notice to them of his claims under the Affidavits of Support.

80. Pursuant to 8 C.F.R. § 213a.4(a)(2), Mr. Balintona was under no legal obligation to make any request to the Defendants for their voluntary compliance with the Affidavits of Support prior to bringing this action to compel their compliance.

**Facts concerning Terminating Events.**

81. No event has occurred that would constitute a Terminating Event under the Affidavits of Support.

82. The First Terminating Event has not occurred because Mr. Balintona has not become a U.S. citizen.

83. The Second Terminating Event has not occurred because Mr. Balintona has

neither worked nor can receive credit for 40 quarters of work under the Social Security Act.

84. The Third Terminating Event has not occurred because Mr. Balintona has not both lost status as a permanent resident and departed from the U.S.

85. The Forth Terminating Event has not occurred because Mr. Balintona is not both subject to an order of removal and has also applied for and obtained in removal proceedings a new grant of adjustment of status based on a new affidavit of support ( if required).

86. The Fifth Terminating Event has not occurred because Mr. Balintona is alive.

87. Defendants' duties under the Affidavits of Support remain in effect.

## V. CLAIMS FOR RELIEF

**1 –Breach of contract (Defendant Ruchelle Agregado Balintona).**

88. Mr. Balintona re-alleges and incorporates all paragraphs above as though fully stated herein.

89. By executing the Primary Affidavit of Support, Defendant` Ruchelle Agregado Balintona entered into an express written contract with the United States Government.

90. Mr. Balintona is a third-party beneficiary of the Primary Affidavit of Support.

91. Mr. Balintona has standing as third-party to enforce his rights under the Primary Affidavit of Support.

92. Under the express terms of the Primary Affidavit of Support, Defendant Ruchelle Agregado Balintona agreed to provide Mr. Balintona with any support necessary to maintain him at an income that is at least 125 percent of the poverty line for his

household size.

93. Defendant Ruchelle Agregado Balintona's responsibility to provide income support commenced on June 30, 2019, when Plaintiff became a lawful permanent resident of the United States.

94. All conditions precedent to Defendant Ruchelle Agregado Balintona's duty to perform on the Primary Affidavit of Support were fulfilled as of June 30, 2019.

95. Defendant Ruchelle Agregado Balintona has breached the Primary Affidavit of Support by failing to provide income support to Plaintiff.

96. As a result of Defendant Ruchelle Agregado Balintona's breach, Mr. Balintona has suffered damages in an amount to be determined at trial.

**2 –Breach of contract (Defendant Merlita Laureto Pumaras).**

97. Mr. Balintona re-alleges and incorporates all paragraphs above as though fully stated herein.

98. By executing the Joint Sponsor Affidavit of Support, Defendant Merlita Laureto Pumaras entered into an express written contract with the United States Government.

99. Mr. Balintona is a third-party beneficiary of the Joint Sponsor Affidavit of Support.

100. Mr. Balintona has standing as third-party to enforce his rights under the Joint Sponsor Affidavit of Support.

101. Under the express terms of the Joint Sponsor Affidavit of Support Defendant Merlita Laureto Pumaras agreed to provide Mr. Balintona with any support necessary to maintain him at an income that is at least 125 percent of the poverty line for his household size.

102. Defendant Merlita Laureto Pumaras's responsibility to provide income support commenced on June 30, 2019, when Mr. Balintona became a lawful permanent resident of the United States.

103. All conditions precedent to Defendant Merlita Laureto Pumaras's duty to perform on the Joint Sponsor Affidavit of Support were fulfilled as of June 30, 2019.

104. Defendant Merlita Laureto Pumaras has breached the Joint Sponsor Affidavit of Support by failing to provide income support to Mr. Balintona.

105. As a result of Defendant Merlita Laureto Pumaras's breach, Mr. Balintona has suffered damages in an amount to be determined at trial.

## VI. REQUEST FOR RELIEF

Mr. Balintona requests the following relief from the Court:

A. Entry of judgment against the Defendants and in favor of Mr. Balintona each and every cause of action asserted herein.

B. An award of actual damages in an amount equivalent to 125% of the poverty line for a household size of one for the State of Hawaii for the period from June 30, 2019 to the date on which judgment issues.

C. A declaration that Mr. Balintona is entitled to continued receipt of financial support from Defendants in the amount of 125% the poverty line for his household size, less actual income, until the occurrence of one of the Terminating Events.

D. An order of specific performance, requiring Defendants to make monthly payments to Mr. Balintona for the amount set forth in Paragraph C above, until such time as a Terminating Event occurs. That such payments shall be due by the fifth

calendar day of each month and deposited in the trust account of Mr. Balintona's law firm.

E.   An award of all Mr. Balintona's attorney fees and costs per 8 U.S.C. § 1183a(c) and the fee and cost provision within the Affidavit of Support Contracts.

F.   The right to amend this complaint to conform to the evidence presented at trial.

G.   Such other and further relief in Mr. Balintona's favor as the Court may deem just and equitable under the circumstances.

**VII CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: April 17, 2023

Signature of Plaintiff: _____
Printed name of Plaintiff: JOSEPH PETER BALINTONA
Pro Se

FSC, R.16, FS IFP, ND 12, H10 14

Received By Mail
Date APR 21 2023

Mailed On
Date 4/21/23